IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.

**NICHOLAS SOTO-CAMARGO, JR.,**

**and**

**BRYAN WURTZ, JR.,**

        Defendants.

Case Nos. 14-cr-40129-DDC,
14-cr-40133-DDC

## MEMORANDUM AND ORDER

This matter comes before the Court on two motions to suppress filed by defendant Nicholas Soto-Camargo, Jr., and two motions to suppress filed by defendant Bryan Wurtz, Jr. On April 29, 2015, Mr. Soto-Camargo filed a Motion to Suppress Intercepted Conversations and Evidence Obtained Therefrom (Doc. 42) and a Motion to Suppress Wiretap Lacking Necessity and Evidence Obtained Therefrom (Doc. 43) in Case No. 14-40129. That same day, Mr. Wurtz filed two identically titled motions (Docs. 20, 22) in Case No. 14-40133.

Both defendants argue that the Court must suppress intercepted cell phone communications, and all evidence derived from those communications, for two reasons. First, defendants contend that the orders authorizing wiretaps on phones used by Mr. Soto-Camargo and his father were facially invalid.[1] Second, defendants argue that the wiretap on TT4 lacked the requisite necessity under 18 U.S.C. § 2518 because the government did not pursue, or explain why it did not pursue, two traditional investigative techniques. The government has filed

---

[1] Both defendants object to the orders authorizing wiretaps on two cell phones, Target Telephone 4 ("TT4") and Target Telephone 11 ("TT11"), used by Mr. Soto-Camargo. In addition, Mr. Soto-Camargo objects to the order authorizing the wiretap on Target Telephone 8 ("TT8"), a cell phone used by his father, Nicholas Soto-Arreola, Sr.

1

responses opposing all four motions filed by the defendants (Docs. 46, 48 in Case No. 14-40129; Docs. 23, 24 in Case No. 14-40133). And the Court conducted hearings on the motions on June 1, 2015. Having reviewed the facts and arguments presented by the parties, the Court denies both defendants' motions for the reasons explained below.

## I.     Background

Mr. Soto-Camargo is charged with conspiring to possess methamphetamine with intent to distribute, use of a communication device to facilitate that conspiracy, actual possession of methamphetamine with intent to distribute, and possession of a firearm in furtherance of drug trafficking. *See* Doc. 25 in Case No. 14-40129. Mr. Wurtz is charged with conspiring with Mr. Soto-Camargo and others to possess methamphetamine with the intent to distribute it. *See* Doc. 1 in Case No. 14-40133.

In December 2012, the Topeka Police Department began to investigate Mr. Soto-Camargo for his involvement with the Sur-13 street gang and the distribution of methamphetamine in Topeka, Kansas. The United States Drug Enforcement Agency ("DEA"), Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and the Kansas Bureau of Investigation ("KBI") eventually joined the investigation. As part of that investigation, the government obtained wiretaps on three cell phones. Upon application by the government, this Court issued an order on July 25, 2014. It authorized the government to intercept communications from TT4. On September 2, 2014, the Court issued an order approving a wiretap on TT8. And on October 1, 2014, the Court authorized the government to intercept communications from TT11. All three wiretap orders provided, in relevant part:

> Minimization of calls and texts intercepted over [the Target Telephone] will automatically take place in the Eastern District of Missouri, regardless of the location where the telephone calls are placed. Accordingly, all calls and texts will first be heard in the Eastern District of Missouri. Based on the mobility of

> cellular telephones, in the event the Target Telephone leaves the territorial jurisdiction of this Court, it is hereby ordered that interceptions may continue without interruption.

*E.g.*, Doc. 42-1 at 9 in Case No. 14-40129; Doc. 22-1 at 9 in Case No. 14-40133.

According to the government, the intercepted communications from TT4 and TT11 revealed, among other things, that Mr. Soto-Camargo had distributed methamphetamine to several individuals in Topeka, including Mr. Wurtz. *See* Doc. 43-4 at 7 in Case No. 14-40129; Doc. 20-3 at 7 in Case No. 14-40133. The government also contends that communications intercepted between TT4 and TT8 show that Mr. Soto-Camargo supplied his father, Mr. Soto-Arreola, with methamphetamine for resale in Topeka. *See* Doc. 43-4 at 8 in Case No. 14-40129; Doc. 20-3 at 8 in Case No. 14-40133. Based in part on this information, the government conducted searches of several homes, including those occupied by Mr. Soto-Camargo and Mr. Wurtz, on October 28, 2014. During those searches, law enforcement seized evidence and arrested both defendants.

## II.     Analysis

The two suppression motions filed by Mr. Soto-Camargo are nearly identical to those filed by Mr. Wurtz. Because they share the same factual basis and request the same relief, the Court, below, addresses both defendants' motions together.

### A. Motions to Suppress Intercepted Communications and Evidence Obtained Therefrom

Defendants argue that the Court must suppress all intercepted communications from TT4, TT8, and TT11, and all evidence derived from those communications, because the orders authorizing the wiretaps were facially invalid. Defendants contend that the orders improperly permitted law enforcement to continue monitoring the target phones while both the phone and listening post were outside of the Court's jurisdiction. As a result, they argue that the Court must

3

suppress all communications and derivative evidence under 18 U.S.C. § 2518(10)(a)(i)-(ii).  The Court disagrees.

The federal wiretap statute, commonly called "Title III," 18 U.S.C. § 2510 *et seq.*, provides that upon application by the government and a finding of statutory cause, a court:

> may enter an ex parte order, as requested or modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (*and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction*).

18 U.S.C. § 2518(3) (emphasis added).  The interception of a communication takes place both at the location of the tapped phone and the location of the government's listening post.  *See United States v. Tavarez*, 40 F.3d 1136, 1138 (10th Cir. 1194).

Here, the Court issued each wiretap order while the corresponding target phone was located in Kansas—*i.e.*, within the Court's territorial jurisdiction.  But law enforcement monitored communications on all three phones from a listening post in the Eastern District of Missouri.  Thus, resolving defendants' contention that the wiretap orders were facially invalid depends on whether a tapped cell phone is a "mobile interception device" as used in 18 U.S.C. § 2518(3).

Title III does not define the term "mobile interception device."  Nor has the Tenth Circuit determined whether it includes a cell phone.  But the Seventh Circuit has.  *See United States v. Ramirez*, 112 F.3d 849, 852-53 (7th Cir. 1997).  In *Ramirez*, a judge sitting in the Western District of Wisconsin approved a wiretap on a cell phone involved in a methamphetamine conspiracy within that judicial district.  *Id*. at 851.  While the tapped phone was located in Wisconsin, the government stationed its listening post in Minnesota (outside of the issuing court's territorial jurisdiction).  *Id*.  The wiretap order contained the same jurisdictional language

permitting monitoring throughout the United States that is at issue here.  *See id*.  The *Ramirez* court affirmed this jurisdictional provision, finding that a literal reading of 18 U.S.C. § 2518(3) "makes very little sense" in the context of cell phone wiretaps.  *Id*. at 852.  Judge Posner explained that a plain language reading of 18 U.S.C. § 2518(3):

> would mean that if as in this case the listening post is stationary and is for practical reasons located outside the district in which the crime is being investigated and the cellular phone is believed to be located, the government, to be sure of being able to tap the phone if it is carried outside the district (as is it is quite likely to be, given its mobility), must obtain the wiretap order from the district court in which the listening post is located, even though that location is entirely fortuitous from the standpoint of the criminal investigation.

*Id*.

The *Ramirez* court concluded that the legislative history of 18 U.S.C. § 2518(3) shows that Congress intended for the phrase "mobile interception device" to have "a broader meaning than the literal one." *Id*.  The court also concluded that the legislative history confirmed that the "emphasis in 'mobile interception device' falls . . . on the mobility of what is intercepted rather than on the irrelevant mobility or stationarity of the device." *Id*. at 853.  Thus, *Ramirez* held that "the term in context means a device for intercepting mobile communications[,]" including a tapped cell phone.  *Id*.  Our district has recently adopted this interpretation.  *See United States v. Vasquez-Garcia*, No. 10-40014-JTM, 2014 WL 7359490, at *3 (D. Kan. Dec. 23, 2014) ("*Ramirez* illustrates the proper application of § 2518(3) to mobile communication technology."); *United States v. Dahda*, No. 12-20083-01-KHV, 2014 WL 1493120, at *2-3 (D. Kan. April 2, 2014) (relying on the Seventh Circuit's holding in *Ramirez* in denial of motion to suppress communications from a tapped cell phone).

Both defendants ask the Court to reject *Ramirez*, and our Court's decisions embracing it.  They urge the Court, instead, should adopt Judge DeMoss' concurring opinion in the Fifth

Circuit's *United States v. North*. 735 F.3d 212, 216-19 (5th Cir. 2013) (DeMoss, J., concurring). There, Judge DeMoss disagreed with the Seventh Circuit's interpretation of 18 U.S.C. § 2518(3)'s legislative history and, instead, relied on the plain language of the statute. *See id*. at 217-18. Judge DeMoss concluded that: "'Mobile' modifies 'device,' thus the phrase 'mobile interception device' on its face appears to refer to the mobility of the device used to intercept communications, not the mobility of the tapped phone." *Id*. at 218. Thus, in Judge DeMoss' view, a federal court may authorize nationwide interception of cell phone communications from outside its jurisdiction only if the government's listening device is mobile rather than stationary.

The Court declines to adopt the Fifth Circuit's reasoning in *North*. As explained in *Ramirez*, a literal interpretation of 18 U.S.C. § 2518(3) "makes very little sense." 112 F.3d at 852. Indeed, Judge DeMoss' concurrence in *North* would require courts to examine just the mobility of the interception device to determine whether a wiretap may capture cellular communications when both the phone and listening post are outside of the issuing district. If the interception device is mobile, the wiretap would be valid. But if it is stationary, the wiretap would be invalid. Such strict adherence to the plain language of 18 U.S.C. § 2518(3) would not protect the privacy interests of wiretap targets. Rather, it seems that it would only encourage law enforcement to use mobile interception devices.

Moreover, contrary to defendants' contentions, Judge DeMoss' logic in *North* would not automatically invalidate the Court's wiretap orders on their face. As Judge O'Hara explained in *Dahda*:

> even under Judge DeMoss's reasoning, the language in the wiretap orders that defendant deems offensive—i.e., "in the event [the target telephones] are transported outside the territorial jurisdiction of the court, interception may take place in any jurisdiction within the United States"—would not invalidate the orders on their face. Rather, in that situation, Judge DeMoss would look to the

6

application of the order to ensure that the device the government used to make interceptions was mobile.

*Dahda*, 2014 WL 1493120, at *3.  In this case, the government's affidavits in support of the wiretaps indicate that the interception device was located in the Eastern District of Missouri. They do not specify whether the device was mobile or stationary.  Thus, even under *North*, the wiretap orders cannot be invalid on their face.

The Court agrees with the Seventh Circuit's reasoning in *Ramirez*, and its holding.  A tapped cell phone is a "mobile interception device" under 18 U.S.C. § 2518(3).  And because the Court approved wiretaps on TT4, TT8, and TT11 while each phone was in Kansas, all intercepted communications and derivative evidence are admissible under Title III.  Thus, the Court denies both motions filed by defendants on this point (Doc. 42 in Case No. 14-40129; Doc. 22 in Case No. 14-40133).

### B. Motions to Suppress Wiretap Lacking Necessity and Evidence Obtained Therefrom

Next, defendants argue that the Court must suppress all communications intercepted from TT4, as well as any evidence derived from those communications, because the government failed to show that the wiretap was necessary under 18 U.S.C. §§ 2518(1)(c) and 2518(3)(c) (Doc. 43 in Case No. 14-40129; Doc. 20 in Case No. 14-40133).  The government has filed responses to both defendants' motions and argues that it satisfied the necessity requirement of Title III (Doc. 46 in Case No. 14-40129; Doc. 23 in Case No. 14-40133).  For the reasons explained below, the Court denies both defendants' motions.

Title III, among other obligations, requires the government to make a full and complete showing that a wiretap is necessary.  *See* 18 U.S.C. §§ 2518(1)(c), 2518(3)(c).  To satisfy this requirement, "the government must show that traditional investigative techniques have been tried

7

unsuccessfully, reasonably appear to be unsuccessful if tried, or are too dangerous to attempt." *United States v. Ramirez-Encarnacion*, 291 F.3d 1219, 1222 (10th Cir. 2002) (citing 18 U.S.C. §§ 2518(1)(c), 2518(3)(c)). The Tenth Circuit has defined traditional investigative techniques as: "(1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants." *United States v. Vanmeter*, 278 F.3d 1156, 1163-64 (10th Cir. 2002) (quoting *United States v. Castillo-Garcia*, 117 F.3d 1179, 1187 (10th Cir. 1997)). Courts also consider pen registers and trap and trace devices as traditional investigative techniques. *Ramirez-Encarnacion*, 291 F.3d at 1222 n.2 (citation omitted). The government must explain with particularity why it did not try any one of these traditional investigative techniques. *Id*. at 1222.

Courts "consider 'all [of] the facts and circumstances . . . to determine whether the government's showing of necessity is sufficient to justify a wiretap.'" *Id*. (quoting *Castillo-Garcia*, 117 F.3d at 1187). "The 'necessity' requirement of 18 U.S.C. § 2518 should be read in a common sense fashion, and it is not necessary that every other possible means of investigation be exhausted." *United States v. Nunez*, 877 F.2d 1470, 1472 (10th Cir. 1989) (internal citations omitted). Once issued, a wiretap is "presumed proper." *United States v. Quintana*, 70 F.3d 1167, 1169 (10th Cir. 1995). And "a defendant carries the burden of overcoming this presumption." *Id*.

The government's affidavit in support of the wiretap on TT4 is extensive. It provides that the objectives of the investigation included, among other things, uncovering the full scope of the drug conspiracy, identifying key participants, and locating all sources of supply. *See* Doc. 43-1 at 90-91 in Case No. 14-40129; Doc. 20-1 at 90-91 in Case No. 14-40133. The affidavit also

includes a description of the investigative techniques used by law enforcement.  The government explains that it used the following investigative techniques:  (1) communication with Mr. Soto-Camargo by confidential sources; (2) controlled purchases of methamphetamine from Mr. Soto-Camargo by confidential sources; (3) physical surveillance; (4) execution of a search warrant; (5) video surveillance via a covert camera system; and (6) pen register and trap and trace devices on TT4.  *See* Doc. 43-1 at 90-135 in Case No. 14-40129; Doc. No. 20-1 at 90-135 in Case No. 14-40133.  In addition to describing the evidence gathered by these techniques, the government detailed the practical limitations and investigative risks associated with each.  *See id*.

The affidavit lists investigative techniques that law enforcement did not pursue, including:  (1) infiltrating the conspiracy by undercover agents; (2) interrogating co-conspirators; (3) issuing grand jury subpoenas; (4) searching trash; (5) installing GPS tracking systems on Mr. Soto-Camargo's vehicles; and (6) making mail cover requests.  *See id*.  The affidavit describes why law enforcement believed that each of these investigative techniques was unlikely to yield relevant evidence or was too dangerous for agents or to the investigation to attempt.  *See id*.

Defendants contend that the government failed to satisfy the necessity requirement of 18 U.S.C. § 2518 for two reasons.  First, they argue that the government failed to place GPS tracking devices on Mr. Soto-Camargo's vehicles before requesting the wiretap on TT4.  Second, defendants argue that the government did not develop confidential sources, including several co-conspirators and associates of Mr. Soto-Camargo before requesting the wiretap.  Because the government failed to pursue these techniques, defendants argue that the wiretap on TT4 lacked necessity.  The Court disagrees.

As for defendants' first argument, the Court notes that GPS tracking is not a "traditional investigative technique" as defined by the Tenth Circuit.  *See Vanmeter*, 278 F.3d at 1163-64;

*Ramirez-Encarnacion*, 291 F.3d at 1222 n.2.  The government thus was not required to attempt to use this technique, or explain why it did not do so, before requesting a wiretap.  *See Ramirez-Encarnacion*, 291 F.3d at 1222 (finding the necessity requirement requires an explanation of law enforcement's use or nonuse of "traditional investigative techniques").  Still, the government's affidavit discussed law enforcement's decision not to use GPS tracking devices.  The government explained that it was concerned that Mr. Soto-Camargo would discover devices installed on his vehicles.  *See* Doc. 43-1 at 129 in Case No. 14-40129; Doc. 20-1 at 129 in Case No. 14-40133.  The government also detailed the risks to its agents and the investigation in placing devices on the vehicles.  *See* Doc. 43-1 at 130 in Case No. 14-40129; Doc. 20-1 at 130 in Case No. 14-40133.  Title III did not require this explanation.  But even if it did, the government's statements would have satisfied the necessity requirement.  The Court therefore denies defendants' first argument.

Next, the defendants argue that the government failed to develop several confidential sources that may have disclosed evidence against Mr. Soto-Camargo.  Defendants list six persons who were facing criminal charges and might have provided incriminating information to investigators.  According to defendants, the government should have questioned these individuals about Mr. Soto-Camargo and the ongoing conspiracy.  Because the government did not, defendants argue that the wiretap on TT4 lacked necessity under Title III.

The government counters arguing that interrogating the listed persons was unlikely to provide law enforcement with information relevant to its investigation.  The government contends that the listed individuals, several of whom members of the Sur-13 street gang, may have revealed the investigation to Mr. Soto-Camargo and others.

The government's affidavit explains that law enforcement used two confidential sources to communicate with and purchase methamphetamine from Mr. Soto-Camargo. *See* Doc. 43-1 at 93-95 in Case No. 14-40129; Doc. 20-1 at 93-95 in Case No. 14-40133.  It states that while those confidential sources managed to purchase drugs from Mr. Soto-Camargo, it was unlikely that they could identify all members of the conspiracy, its stash house locations, or its sources of supply. *See id*.  In addition, the affidavit describes why investigators elected not to question co-conspirators and associates of Mr. Soto-Camargo about the ongoing conspiracy. *See* Doc. 43-1 at 122-23 in Case No. 14-40129; Doc. 20-1 at 122-23 in Case No. 14-40133.  According to the government, interrogating those individuals likely would:  "alert the targets and/or their co-conspirators to the existence of [the] investigation, thereby causing them to become more cautious in their activities or flee to avoid further investigation or prosecution, or would otherwise compromise [the] investigation."  Doc. 43-1 at 123 in Case No. 14-40129; Doc. 20-1 at 123 in Case No. 14-40133.

The government's explanation is sufficient to satisfy the necessity requirement of Title III.  It sets out law enforcement's specific reasons for not questioning suspected co-conspirators and Mr. Soto-Camargo's associates.  Because the government articulated these reasons in its affidavit, it was justified in forgoing a traditional investigative technique in favor of a wiretap on TT4. *See United States v. Newman*, 733 F.2d 1395, 1399 (10th Cir. 1995) ("This Court has held that the determination of the dimensions of an extensive drug conspiracy justifies the use of electronic surveillance.") (citations omitted).  Defendants ask the Court to speculate about the potential testimony and actions of individuals associated with Mr. Soto-Camargo.  The Court will not do so.  The government has met its burden to show that the wiretap on TT4 was

necessary under 18 U.S.C. § 2518.  The Court thus denies defendants' motions to suppress on this basis as well.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Nichols Soto-Camargo, Jr.'s motions to suppress (Docs. 42, 43) in Case No. 14-40129 are denied.

**IT IS FURTHER ORDERED THAT** defendant Bryan Wurtz, Jr.'s motions to suppress (Docs. 20, 22) in Case No. 14-40133 are denied.

**IT IS SO ORDERED.**

Dated this 19th day of June, 2015, at Topeka, Kansas.

                                      **s/ Daniel D. Crabtree**
                                      **Daniel D. Crabtree**
                                      **United States District Judge**